UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| JOSE TOMAS MARTINEZ-ELVIR, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:25-CV-589-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| SAM OLSON, Field Director of | ) | **ORDER** |
| Enforcement and Removal Operations, | ) | |
| Chicago Field Office, Immigration and | ) | |
| Customs Enforcement, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Jose Tomas Martinez-Elvir's Petition for Writ of Habeas Corpus, [R. 1], filed September 11, 2025. Mr. Martinez-Elvir (hereinafter, "Petitioner") alleges that Respondents—which include Sam Olson, the Field Director of Enforcement and Removal Operations at the Chicago Field Office of Immigration and Customs Enforcement (hereinafter, "ICE"); Department of Homeland Security (hereinafter, "DHS") Secretary Kristi Noem; DHS; Pamela Bondi, United States Attorney General; the Executive Office for Immigration Review; and Jeff Tindall, the Warden of Oldham County Detention Center—have detained him in violation of the Immigration and Nationality Act (hereinafter, "INA") and the Fifth Amendment's Due Process Clause. [R. 1, pp. 1, 15–17]. The Court issued an Order to Show Cause, [R. 6], on September 12, 2025, setting an evidentiary hearing date and establishing a briefing schedule for the parties. In response, the parties filed a Joint Motion, [R. 9], to forego the evidentiary hearing and proposed an alternative briefing schedule, which the Court granted. [R. 10]. Both parties submitted further briefs, with Respondents filing a Response to the Court's Order to Show Cause, [R. 13], and

Petitioner filing a reply, [R. 16]. The matter is therefore ripe for review. For the following reasons, the court will grant Petitioner's Petition for Writ of Habeas Corpus, [R. 1].

## I.    BACKGROUND

Petitioner Jose Tomas Martinez-Elvir is a forty-one-year-old Honduran citizen who has resided in the United States for more than twelve years, since June 2013. [R. 1, p. 5]. He is the father of an infant U.S. citizen son, and he and his wife raise four other children together in a home they own in Chicago, Illinois. *Id.* at 7. Before his detention, Petitioner worked as a machine operator in a factory and was the family's primary income-earner. *Id.* Petitioner is heavily involved in his community, assisting with prayer services and performing volunteer janitorial work at his church. *Id.* Other than a single conviction from 2017 for driving while under the influence of alcohol, Petitioner has no criminal history. *Id.* Petitioner has since completed alcohol therapy treatment, and community service hours, and he now no longer consumes alcohol. *Id.*

On June 28, 2025, Petitioner was arrested outside of his home in Chicago, Illinois. *Id.* at 6. Petitioner alleges that the arrest was warrantless, *id.*, but Respondents attach a purported warrant as an exhibit and claim that on that same day (i.e., on June 28, 2025), ICE officials issued a warrant for Petitioner's arrest based on probable cause that Petitioner was removable from the United States. [R. 13, p. 2; R. 13-1, p. 6]. Also on June 28, 2025, after Petitioner's arrest, DHS initiated immigration removal proceedings against him before the Chicago Immigration Court pursuant to 8 U.S.C. § 1229a by filing a Form I-862, Notice to Appear (hereinafter, "NTA"). [R. 1, pp. 6–7; R. 13-1, pp. 2–5]. The NTA charges Petitioner under 8 U.S.C. § 1182(a)(6)(A)(i)[1] as being "present

---

[1] The NTA cites to "212(a)(6)(A)(i) of the Immigration and Nationality Act." [R. 13-1, p. 2]. The Court will instead use U.S.C. citations throughout for uniformity.

in the United States without being admitted or paroled," [R. 13-1, p. 2], and further alleges the following:

> 1. You are not a citizen or national of the United States;
> 2. You are a native of HONDURAS and a citizen of HONDURAS;
> 3. You arrived in the United States at or near UNKNOWN PLACE, on or about unknown date;
> 4. You were not then admitted or paroled after inspection by an Immigration Officer.

*Id.* At the same time, DHS served Petitioner with a Form I-200, Warrant or Arrest of Alien, and a Form I-286, Notice of Custody Determination. *Id.* at 6, 8. These documents cite 8 U.S.C. § 1226, codified as Section 236 of the INA, as the authority for Petitioner's detention. *Id.*

On July 8, 2025, DHS, in coordination with the United States Department of Justice, issued a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," which provides that all "applicants for admission" should be detained pursuant to 8 U.S.C. § 1225, rather than § 1226. [R. 1, pp. 7–8]; *see also ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/6JYU-M2SY]. The policy change effectively subjects all persons who previously entered the United States without inspection to mandatory detention under § 1225(b)(2)(A), regardless of how long they have been present in the United States or whether they were detained at or near the United States border or other ports of entry. [R. 1, pp. 7–8, 10, 13–14].

After ICE took custody of Petitioner, Petitioner requested a bond redetermination hearing in front of an Immigration Judge (hereinafter, "IJ") pursuant to 8 C.F.R. § 1236. [R. 13-1, p. 15]. On July 18, 2025, the IJ considered and rejected ICE's argument that, pursuant to DHS's new policy, the IJ lacked jurisdiction under § 1225(b)(2)(A) to grant Petitioner bond. [R. 13, p. 3].

Instead, the IJ granted Petitioner's "request for a change of custody status" and ordered Petitioner's release from custody under a $5,000 bond. [R. 13-1, p. 15]. ICE reserved appeal, *see id.* at 16, and later that day filed Form EOIR-43, Notice of Ice Intent to Appeal Custody Redetermination, which invoked 8 C.F.R. § 1003.19(i)(2) to "automatically stay[] the [IJ's] custody redetermination decision." *Id.* at 18. As long as the requirements of 8 C.F.R. § 1003.6(c)(1) are met,[2] the IJ's bond decision is stayed until either the Board of Immigration Appeals (hereinafter, "BIA") resolves ICE's appeal or ninety days pass, whichever occurs first. 8 C.F.R. § 1003.6(c)(4).

On September 11, 2025, Petitioner filed before this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2441, in which Petitioner alleged violations of the INA and the Fifth Amendment Due Process Clause. [R. 1, pp. 4, 15–16]. Petitioner argues that because he is a non-citizen residing in the United States, charged as inadmissible for having entered the country without inspection under 8 U.S.C. § 1882(a)(6)(A)(i), Petitioner's detention can only occur under § 1226 of the INA, not under § 1225. [R. 1, pp. 9–11]. Accordingly, Petitioner argues that because the IJ determined that he was not a danger to the community or a flight risk during his detention hearing, he is entitled to release on bond pursuant to § 1226(a) pending his removal hearings. [R. 1, p. 8]. Respondents assert that Petitioner's detention is proper under § 1225(b)(2)(A) of the INA

---

[2] Automatic stays are preserved if the DHS attorney files alongside a notice of the appeal a "certification by a senior legal official" stating that:

> (i) The official has approved the filing of the notice of appeal according to review procedures established by DHS; and

> (ii) The official is satisfied that the contentions justifying the continued detention of the alien have evidentiary support, and the legal arguments are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing precedent or the establishment of new precedent.

8 C.F.R. § 1006.6(c)(1).

because Petitioner qualifies as an "applicant for admission," a category of noncitizens subject to mandatory detention pending removal proceedings. [R. 13, pp. 2–3, 8].

Petitioner seeks immediate release from custody in accordance with the IJ's bond order or, in the alternative, an order from this Court directing Respondents to show cause why Petitioner's petition should not be granted; an injunction preventing Respondents from moving Petitioner outside this Court's jurisdiction during the adjudication of his petition; a declaration that 8 U.S.C. § 1226(a)—not 8 U.S.C. § 1225(b)(2)(A)—is the appropriate statutory provision governing his detention and eligibility for bond; and the award of attorney's fees and costs under 28 U.S.C. § 2412.

On September 12, 2025, the Court issued an Order to Show Cause, [R. 6], setting an evidentiary hearing date and establishing a briefing schedule for the parties. In response, the parties filed a joint motion, [R. 9], to forego the evidentiary hearing and propose an alternative briefing schedule. The Court granted the parties' joint motion and further ordered that Petitioner not be transferred out of the Western District of Kentucky pending the outcome of this case. [R. 10]. Both parties then submitted further briefs. *See* [R. 13; R. 16]. Petitioner's petition is therefore ripe for decision.

## II.    LEGAL STANDARD

Habeas relief is available where a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2241 confers jurisdiction on federal courts to review noncitizens' claims challenging the constitutionality of their detention during the pendency of removal proceedings. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention

without bail."). Although § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the . . . denial of bond or parole," the Supreme Court has recognized that district courts retain jurisdiction to hear habeas petitions concerning issues that are collateral or ancillary to removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) ("Section 1226(e) does not preclude challenges to the statutory framework that permits [an] alien's detention without bail." (quotations omitted) (citing *Demore*, 538 U.S. at 517)). Because Petitioner challenges the statutory and constitutional validity of his continued detention after his bond hearing, and does not directly challenge his removal proceedings, the court finds that it has jurisdiction to consider Petitioner's claims.

## III.    ANALYSIS

### A. Exhaustion

Exhaustion is an administrative law doctrine whereby litigants who receive adverse decisions by administrative agencies typically must pursue administrative remedies before seeking judicial relief. *See Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). "[T]he Supreme Court has identified three categories of statutory schemes when deciding if a specific statute" requires exhaustion. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019) (citing *Sims v. Apfel*, 530 U.S. 103, 107–110 (2000)). First, statutes expressly require exhaustion in their statutory text.[3] *Id.* (citing *Sims*, 530 U.S. at 107). Second, statutes may be silent as to exhaustion, but nevertheless "permit agencies to adopt regulations detailing their internal claims-processing

---

[3] As examples, the Sixth Circuit in *Island Creek Coal* cites to the Mine Act, 30 U.S.C. § 816(a)(1), which states that "[n]o objection that has not been urged before the [Federal Mine Safety and Health Review] Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances," and to 42 U.S.C. § 1997e(a), which merely requires "administrative remedies" to be "exhausted." 937 F.3d at 746–47.

rules." *Id.* at 747 (citing *Sims*, 530 U.S. at 108). And third, where "neither statute nor regulation says anything about exhaustion, the Supreme Court has held that a court may still impose an *implied* exhaustion rule as long as the rule comports with the statutory scheme." *Id.* (citing *Sims*, 530 U.S. at 108–10). Under this third doctrine of "prudential exhaustion," the Sixth Circuit has stated that it is within the Court's "sound judicial discretion" whether to require exhaustion "[w]hen Congress has not clearly required exhaustion." *Id.*; *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013).

Although the Sixth Circuit has not adopted a formal test for when prudential exhaustion is warranted, many trial courts from the Sixth Circuit borrow from the Ninth Circuit's test, articulated in *United States v. California Care Corp.*, whereby courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

709 F.3d 1241, 1248 (9th Cir. 1983); *see Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (applying the *California Care* factors); *see also, e.g., Singh v. Lewis et al.*, No. 4:25-CV-96-RGJ, 2025 WL 2699219 (W.D. Ky. Sep. 22, 2025); *Hernandez Torrealba v. United States Dep't of Homeland Security*, No. 1:25-CV-1621, 2025 WL 2444114 (N.D. Ohio Aug. 25, 2025). Alternatively, too, a court can choose to waive exhaustion when the "legal question is fit for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967)).

Here, neither Petitioner nor Respondents assert exhaustion-related arguments in their briefing. *See generally* [R. 13, R. 16]. However, because nearly all decisions in similar cases by

other courts within the Sixth Circuit—including decisions by this Court—discuss exhaustion, this Court will consider the issue *sua sponte*. *See, e.g., Singh*, 2025 WL 2699219; *Torrealba*, 2025 WL 2444114; *Ballestros v. Noem*, No. 3:25-CV-594-RGJ, 2025 WL 2880831 (W.D. Ky. Oct. 9, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sep. 9, 2025); *Alonso-Portillo v. Bondi*, No. 1:25-CV-306, 2025 WL 2483393 (S.D. Ohio Aug. 28, 2025).

As in *Torrealba*, the parties here do not direct the Court toward any statute or regulation that would require administrative exhaustion under these circumstances, nor is the Court aware of any such statute or regulation.[4] *Cf.* 2025 WL 2444114, at *8; *see generally* [R. 13; R. 16]. The Court therefore considers whether prudential exhaustion applies in this case. *See Singh*, 2025 WL 2699219, at *2–3 (discussing prudential exhaustion). The Court here notes, as did Judge Jennings from this district, that "[t]he Sixth Circuit has not adopted any formal test [for applying prudential exhaustion], but instead, many trial courts within the Sixth Circuit borrow the Ninth Circuit test from [*California Care*]." *Id.* at *2; *see Rabi v. Sessions*, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018) (citing *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011)). This Court will therefore do the same.

Applying the *California Care* factors to this case, the Court finds that all factors weigh against requiring prudential exhaustion. Regarding the first factor, because the central issue here is whether Petitioner may be detained under Section 1225 or Section 1226 of the INA—a purely legal question of statutory interpretation—agency expertise is not required "to generate a proper record and reach a proper decision." *California Care*, 729 F.2d at 1248; *see Singh*, 2025 WL

---

[4] The Court notes that 8 U.S.C. § 1252(d), while not cited by the parties, provides in relevant part that "[a] court may review a final order of removal only if — (A) the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d). Here, all parties appear to agree that there is no "final order of removal" because Respondents' pending appeal of the IJ's bond determination means Petitioner's removal proceedings also remain pending. Even if Petitioner has a final order of removal, he does not here ask the Court to review it. Thus, the Court presumes that § 1252(d) does not presently apply to these proceedings.

2699219, at *2; *Pizarro Reyes*, 2025 WL 2609425, at *3; *Lopez-Campos*, No. 2:25-CV-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Moreover, the Supreme Court in *Loper Bright Enterprises v. Raimondo* recently affirmed that "the judiciary is the final authority on issues of statutory construction." 603 U.S. 369, 401 (2024). Regardless, this Court is not bound by and need not defer to agency interpretations of statutes. *See id.* ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."); *Singh*, 2025 WL 2699219, at *2 ("[T]his Court is not bound, or deferential to any agency interpretation of a statute."); *Pizarro Reyes*, 2025 WL 2690425, at *6 ("[T]he Court here is not bound by the BIA's interpretation of § 1225(b)(2)(A)." (citing *Loper Bright*, 603 U.S. at 413)).

Turning to the second factor, because Petitioner alleges a constitutional violation of due process in his habeas petition, this court need not wait for ICE's appeal to an administrative review board—here, to the BIA—in order to reach the merits. The Sixth Circuit has held that because the BIA cannot review constitutional challenges, due process challenges typically do not require exhaustion. *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006) *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("[E]xhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") (citation omitted); *see also Singh*, 2025 WL 2699219, at *2; *Lopez-Campos*, 2025 WL 2496379, at *5.

Finally, as to the third factor, Respondents have repeatedly maintained their position that Section 1225 of the INA applies to Petitioner, not Section 1226. *See* [R. 1, pp. 10–11; R. 13, pp. 10–15]. It is far from clear that any administrative review would result in Respondents changing its position and thereby "preclud[ing] the need for judicial review." *California Care*, 709

F.2d at 1248; *see Singh*, 2025 WL 2699219, at *2. Thus, taken together, the Court finds that prudential exhaustion is not required under the *California Care* factors.

In the alternative, the Court also finds that exhaustion should be waived because the "legal question" at issue "is fit for resolution and delay means hardship." *Shalala*, 529 U.S. at 13. Other courts have noted that "[b]ond appeals before the BIA, on average, take six months to complete." *Lopez-Campos v. Raycraft*, 2025 WL 2496379 at *5 (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025)); *see also Singh*, 2025 WL 2699219, at *3.

Moreover, as other courts across the country have recognized, the "delays inherent" in the BIA's administrative process "would result in the very harm that the bond hearing was designed to prevent," as it would cause Petitioner's prolonged detention without due process. *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (citation omitted); *see also Gomes v. Hyde*, No. 1:25-CV-11571, 2025 WL 1869299, at *5 (D. Mass. July 7, 2025) (finding the "prolonged loss of liberty" from "several additional months" in possibly unlawful detention would "constitute irreparable harm"). Unnecessary detention also harms Petitioner's ability to gather evidence and prepare his case against deportation. *See Rodriguez*, 779 F.Supp.3d at 1254. Other courts within this district and across the country have waived exhaustion under similar circumstances. *See, e.g., Singh*, 2025 WL 2699219, at *3. (finding that waiver of exhaustion is proper where hardship would result from the petitioner's continued detention); *Lopez-Campos*, 2025 WL 2496379, at *5 ("Because exhaustion would be futile and unable to provide Lopez-Campos with the relief he requests in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition."); *Pizarro Reyes*, 2025 WL 2609425, at *4 ("If the Court requires administrative exhaustion, Pizarro Reyes faces not only more, potentially unnecessary, months in prison, but also harm to his ability to mount a successful case against his

removal. As a result, the Court will waive administrative exhaustion."); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924, at *6-7 (D. Mass. Sep. 9, 2025) (holding that because "the policy concerns animating the common-law exhaustion" are absent, "waiver of exhaustion is warranted").

The Court can presently decide whether Petitioner is subject to mandatory detention under § 1225 of the INA, or is instead only detainable pursuant to § 1226. Should the Court decide that § 1226 controls, Petitioner could be released within days of that determination, as opposed to the expected six-month-or-more potential period for the BIA to resolve ICE's pending appeal. Therefore, where, as here, the Court can resolve the question of statutory interpretation presently before it, the Court concludes that unnecessary hardship would result from prolonging Petitioner's detention. The Court will thus waive any prudential exhaustion requirement for Petitioner and reach the merits of his petition.

### B. Section 1225 Versus Section 1226

The central question in Petitioner's habeas petition is which provision of the INA applies to a Honduran citizen who has lived in the United States for over twelve years, was never lawfully admitted to the country, was arrested, and now faces removal proceedings. Petitioner, in arguing that § 1226(a) applies to his detention, points to his status as a noncitizen who previously entered the United States and has resided here for more than twelve years, and further cites approximately thirty years of immigration policy. [R. 1, pp. 5, 9–10]. Respondents, arguing that § 1225(b)(2)(A) applies, cite the statutory text and recent BIA decisions as supporting Petitioner's status as an "applicant for admission" and as "seeking admission." *See* [R. 13, pp. 10–15]. Accordingly, Respondents assert, because § 1226(a) is reserved for those who do not fall under § 1225(b)(2)(A),

and because Petitioner *does* fall under § 1225(b)(2)(A), Petitioner is subject to mandatory detention. *See id.*

The Court thus faces a question of statutory interpretation, in that it must distinguish between § 1225 and § 1226 of the INA and then determine which section governs Petitioner's detention. When interpreting a statute, "the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)); *see also King v. Burwell*, 576 U.S. 473, 486 (2015). Each word in the statute should be read in line with "its ordinary, contemporary, common meaning." *Kentucky v. Biden*, 23 F.4th at 603 (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)). Often, however, "the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). Accordingly, "[t]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101, (2012). Additionally, when statutory interpretation issues come before the court, "statute[s] should be construed so that effect is given to all [their] provisions[.]" *Corley v. United States*, 556 U.S. 303, 314, (2009); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (citation and quotations omitted)). All in all, courts must "use every tool at their disposal to determine the best reading of the statute." *Loper Bright*, 603 U.S. at 400.

The Court first turns to the plain language of the statutes. Section 1225(a)(1) provides that an "applicant for admission" is "an alien present in the United States who has not been admitted

or who arrives in the United States." 8 U.S.C. § 1225(a)(1). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). Section 1225(b) broadly addresses "[i]nspection of applicants for admission," and § 1225(b)(2)(A) specifically provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. §§ 1225(b), (b)(2)(A).

By contrast, § 1226(a) is less specific, addressing the "[a]pprehension and detention of aliens" rather than "applicants for admission" or "alien[s] seeking admission" specifically. *Cf.* §§ 1226, 1225(b)(2)(A). Addressing "[a]rrest, detention, and release," the text of § 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Further, while the alien's removal decision is pending, the statute permits the Attorney General to "release the alien" on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Considering the text of the statutes, the question of statutory interpretation before this Court is whether Petitioner is an "applicant for admission" or "seeking admission" under § 1225(b)(2)(A), or instead falls under § 1226(a)'s more general provisions.

Upon review, the statutory text does not definitely answer what it means to be "present" yet "not . . . admitted" or "arrive[d]" in the United States. 8 U.S.C. § 1225(a)(1); *see Beltran Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *3 (W.D. Ky. Sep. 19, 2025); *Pizarro Reyes*, 2025 WL 2609425, at *5. Accordingly, it is not clear from the statutory text whether Petitioner, who has already entered the United States and spent over twelve years residing here, qualifies as an "applicant for admission" to whom § 1225(b)(2)(A) applies. Because the Court

finds the statutory text ambiguous, the Court therefore must continue its statutory analysis by considering the statute's contextual clues. *See In re Vill. Apothecary*, 45 F.4th at 947 ("[T]he inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (citation and quotations omitted)); *Kentucky v. Biden*, 23 F.4th at 603 ("[T]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." (citation and quotations omitted)); *Barrera*, 2025 WL 2690565, at *3; *Pizarro Reyes*, 2025 WL 2609425, at *5.

As discussed, the Court aims to give meaning to each word in the statute so that "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc.*, 534 U.S. at 31 (citation and quotations omitted). This includes the statute's title. Section 1225 is entitled "[i]nspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." 8 U.S.C. § 1225 (emphasis added). The use of "arriving aliens" to describe the noncitizens to whom the statute applies strongly suggests that § 1225 pertains to noncitizens first *entering* the United States. *See Barrera*, 2025 WL 2690565, at *4; *Pizarro Reyes*, 2025 WL 2609425, at *5; *Lopez-Campos*, 2025 WL 2496379, at *7. The fact that § 1225 establishes an inspection scheme for the admission of noncitizens into the country supports this reading of the title. *See* 8 U.S.C. § 1225; *see also Dubin v. United States*, 599 U.S. 110, 121 (2023) ("[A] title 'is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest.'" (quoting *Yates v. United States*, 574 U.S. 528, 552 (2015) (Alito, J., concurring in judgment))).

Other context from the statutory text corroborates this reading. Section 1225(b)(2)(B), which provides "[e]xceptions" to § 1225(b)(2)(A), states that "[s]ubparagraph (A) shall not apply to "crewm[e]n" or "stowaway[s]." These descriptions of migrants suggests their arrival at a border or other port of entry, not their continued presence in the United States for over a decade. *See Barrera*, 2025 WL 2690565, at *4; *Pizarro Reyes*, 2025 WL 2609425, at *5; *Lopez-Campos*, 2025

WL 2496379, at *7. Additionally, Congress's decision to enact separate sections of the INA for "inadmissible *arriving* aliens" and the more general "[a]pprehension and detention of aliens" suggests that § 1225 was enacted for a specific and limited purpose. §§ 1225 (emphasis added), 1226; *see Dubin*, 599 U.S. at 121 ("That Congress separated the identity fraud crime from the identity theft crime in § 1028A suggests that § 1028A is focused on identity theft specifically . . . ." (citation and quotations omitted)); *Barrera*, 2025 WL 2690565, at *4; *Pizarro Reyes*, 2025 WL 2609425, at *5; *Lopez-Campos*, 2025 WL 2496379, at *8. Considering the entirety of § 1225, then, the Court determines that the terms "applicant[] for admission" and "seeking admission" do not apply to noncitizens such as Petitioner, who has lived in the United States for over twelve years, has never sought admission to the country, and was arrested in front of his home in Chicago—not while attempting to illegally cross the border or pass through a port of entry. *See* [R. 1, p. 6]; *see also, e.g., Barrera*, 2025 WL 2690565, at *4; *Singh*, 2025 WL 2699219, at *3; *Pizarro Reyes*, 2025 WL 2609425, at *5; *Lopez-Campos*, 2025 WL 2496379, at *8.

This reading is confirmed by the Supreme Court's analysis of the same provisions of the INA. In *Jennings v. Rodriguez*, the Court cited to § 1225 as applying to the process of admission that "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." 583 U.S. at 287. The Court further distinguished between Section 1225 and 1226 by describing § 1225 as applying to noncitizens "seeking admission into the country" and Section 1226 as the "default rule" that "applies to aliens already in the United States" *Id.* at 289, 303. Based on the Supreme Court's reading of these same statutory provisions, then, § 1226 also appears to apply to Petitioner since

he was detained not while "arriving to the country," but instead while "already in the United States." *Id.*

Of note to this Court's analysis, too, is Congress's recent amendment to Section 1226 via the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025). The Laken Riley Act added § 1226(c)(1)(E), which requires detention for noncitizens who are inadmissible under §§ 1182(a)(6)(A) (applying to noncitizens "present in the United States without being admitted or paroled"), 1182(a)(6)(C) (noncitizens who commit misrepresentations), or 1182(a)(7) (noncitizens lacking valid documentation) and who have been arrested for, charged with, or convicted of certain crimes. § 1226(c)(1)(E)(i)–(ii). Because § 1182(a)(6)(A)(i) specifically refers to aliens "present in the United States without being admitted or paroled" and § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the Laken Riley Act's new exception to § 1226's general rule (permitting bond or conditional parole) would be redundant if § 1225(b)(2) already authorized the detention of such individuals. *See Gomes*, 2025 WL 1869299, at *7. In other words, and as other district courts have determined, "[i]f Section 1225(b)(2) applied to noncitizens who are arrested on a warrant while residing in the United States, it would render Section 1126(c)(1)(E)'s criminal conduct criterion superfluous whenever the noncitizen is inadmissible under Sections 1182(a)(6)(A) or (a)(7)." *Id.*; *see also Barrera*, 2025 WL 2690565, at *4–5; *Lopez-Campos*, 2025 WL 2496379, at *8; *Pizarro Reyes*, 2025 WL 2609425, at *5. As the *Gomes* court recognized, "[s]uch an interpretation would largely nullify a statute Congress enacted this very year, [and] must be rejected." 2025 WL 1869299, at *7.

By contrast, Respondents argue that "noncitizens who have not been admitted or paroled are considered 'applicants for admission,'" meaning that "any noncitizen who entered [the country] unlawfully [is] one applying for entry, even if they are already physically present in the

United States," thereby subjecting them to § 1225(b)(2)(A)'s mandatory detention provision. [R. 13, pp. 9–10 (citing 8 U.S.C. §§ 1225(a)(1), 1182(d)(5)(A); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020); *Matter of Lemus*, 25 I&N Dec. 734, 743 (BIA 2012)]. Along similar lines, Respondents argue that "seeking admission" under § 1225(b)(2)(A) "does not refer to a noncitizen attempting to physically access the United States" (e.g., by physically crossing the border) and "instead refers to a noncitizen seeking a *lawful* means of entering the United States (e.g.[,] receiving a visa)." [R. 13, p. 11 (citing 8 U.S.C. § 1101(a)(13)(A)]. Summarizing their argument, Respondents state that § 1225(b)(2)(A) "requires an immigration officer to detain a noncitizen 'present' in the United States who has not been lawfully admitted or paroled and who is 'not clearly and beyond doubt entitled to be admitted.'" [R. 13, pp. 11–12 (citing 8 U.S.C. §§ 1101(a)(13)(A), 1225(a)(1), (b)(2)(A)]. Therefore, Respondents claim, because Petitioner unlawfully entered the United States, he is an "applicant for admission," and because Petitioner now wishes to remain in the United States lawfully, he is "seeking admission." [R. 13, p. 12].

The Court disagrees. As other courts have pointed out, including this Court, Respondents' textual analysis completely ignores the term "seeking" in the phrase "seeking admission." *See, e.g., Barrera*, 2025 WL 2690565, at *4; *Lopez-Campos*, 2025 WL 2496379, at *6. Because the term "seeking" "implies action," Petitioner—who has been present in the country for over twelve years—is not actively "seeking admission." *Barrera*, 2025 WL 2690565, at *4 (citing *Lopez-Campos*, 2025 WL 2496379, at *6). Moreover, even if the Court credits Respondents' textual analysis, it is still irrelevant as to Petitioner, as nothing in the record suggests that Petitioner has ever attempted to gain lawful entry to the United States until he was apprehended and detained. *See id.*; *Lopez-Campos*, 2025 WL 2496379, at *7.

The Court further notes that the record reveals Respondents' current textual argument goes against Respondents' own stated basis for detaining Petitioner. When the United States issued its arrest warrant for Petitioner, Form I-200, the warrant cited to the section of the INA codified at § 1226—not § 1225. *See* [R. 13-1, p. 6 (citing § 236 of the INA)]. Respondents did not claim that § 1225 was their actual basis for detaining Petitioner until Petitioner's bond hearing before the IJ. [R. 13, p. 3]. Accordingly, this Court will not credit Respondents' "impermissible post hoc rationalization" and will dismiss this as a "procedural tactic," as other trial courts have done. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22 (2020); *Barrera*, 2025 WL 2690565, at *4; *see Lopez Benitez v. Francis*, 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025); *Lopez-Campos*, 2025 WL 2496379, at *8 n.4.

Respondents' caselaw cited in support of their position is also unpersuasive. First, Respondents cite to *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), as support for their argument that any noncitizen who entered the United States unlawfully should be considered perpetually "seeking admission." *See* [R. 13, p. 10]. *Thuraissigiam* held that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* at 139. But Petitioner was not arriving at a port of entry when he was arrested, since he was arrested outside his Chicago home. *See* [R. 1, p. 6]. And there is no evidence whatsoever in the record that Petitioner was "paroled elsewhere in the country for years pending removal," either. *See Thuraissigiam*, 591 U.S. at 139. The Court in *Espinoza v. Kaiser* aptly described the parole process as follows:

> ICE may choose to release a person on parole. The decision is discretionary and is made on a case-by-case basis. An immigrant who has been detained at the border may be paroled for humanitarian reasons or due to it providing a significant public benefit (8 U.S.C. § 1182(d)(5)(A)), or she may be conditionally released (8 U.S.C.

> § 1226(a)). These are distinct procedures. A person on conditional parole is usually released on their own recognizance subject to certain conditions such as reporting requirements. To be released on conditional parole, there must be a finding that the immigrant does not pose a risk of flight or danger to the community.

No. 1:25-CV-01101-JLT-SKO, 2025 WL 2675785, at *6 (E.D. Cal. Sep. 18, 2025) (citations omitted). While Petitioner was subject to no such process here, *Thuraissigiam* specifically addressed the parole process—not someone who, like Petitioner, entered the country illegally and has since resided here for years. *See* 591 U.S. at 139. The Court also notes that the respondent in *Thuraissigiam* was stopped by a U.S. Border Patrol agent within twenty-five yards of the border, making the case inapt as applied to Petitioner. *Id.* at 114. Respondents' reliance on it here is therefore misplaced for multiple reasons, and the Court will not credit it.

Respondents also point to two recent and non-binding, yet persuasive, BIA opinions. In the first, *Matter of Lemus-Losa*, the BIA held that a noncitizen who was inadmissible under 8 U.S.C. § 1182(a)(9)(B) due to reentry after his unlawful presence was precluded from qualifying for an adjustment of his status. 25 I&N 734, 746–47. In holding as such, the BIA rejected the Seventh Circuit's view that "seeking admission" necessarily meant "lawful entry" as the term was used in 8 U.S.C. § 1182(a)(9)(B)(i)(II). *Id.* at 739. Under, Section § 1182(a)(9)(B)(i)(II)—a different section of the INA than those at issue here—aliens who were previously removed from the United States, returned, were "unlawfully present in the United States for one year or more," and were "again seeking admission" within ten years of their removal were deemed ineligible to receive visas or admission to the country. 8 U.S.C. § 1182(a)(9)(B)(i)(II). Within that statutory context, the BIA held that "seeking admission" was a term of art in that it did not have to mean "actually requesting permission to enter the United States in the ordinary sense" of a "request for permission," but it could instead apply to those seeking entry either lawfully or unlawfully. *Id.* at 743, n.6. In other words, the BIA understood that those "seeking admission" in that context

included both "*true* applicants for admission"—those who, at one point, "entered the United States with visas or other entry documents before their presence became unlawful"—and "*constructive* applicants"—those "applicants for admission" under § 1225(a)(1). *Id.* However and importantly, the BIA did *not* hold that "constructive applicants" are perpetually "seeking admission" simply by virtue of their unlawful status; instead, the BIA acknowledged that such individuals can, under the statutory language, "again seek[] admission." *Id.*; 8 U.S.C. § 1182(a)(9)(B)(i)(II). To put it plainly, the BIA understood the phrase "seeking admission" to mean a discrete temporal act, not as an ongoing status describing noncitizens residing within the United States for an extended period. This reading aligns with the Court's previous analysis and with the plain language of the statute. *See supra* Section III(B). Because Petitioner, upon his arrest, was not actively, presently, or affirmatively attempting to enter the United States and was not on parole, *Matter of Lemus-Losa* does not support his detention under § 1225.

The second case to which Respondents cite is *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025), a very recent BIA opinion issued within the last two months. There, the BIA concluded that § 1225(b)(2)(A) covers inadmissible noncitizens who illegally reside in the United States for longer than two years without apprehension. *See id.* In support, the BIA argued that it was a "legal conundrum" to think that a noncitizen's continued unlawful presence in the country means that they are not "seeking admission." *Id.* at 221. According to the BIA, such an argument essentially means "that after some undefined period of time residing in the interior of the United States without lawful status, the INA provides that an applicant for admission is no longer 'seeking admission' and has somehow converted to a status that renders him or her eligible for a bond hearing under" § 1226(a). *Id.* The BIA's statutory analysis therefore reached the opposite conclusion from the Court's here, and from other Courts' across the country. *See, e.g., Barrera*, 2025 WL 2690565, at

*3–5; *Pizarro Reyes*, 2025 WL 2609425, at *4–8; *Gomes*, 2025 WL at *5–8; *Patel v. Tindall*, No. 3:25-CV-373-RGJ, 2025 WL 2823607, *3–5 (W.D. Ky. Oct. 3, 2025).

The Court declines to follow the BIA's interpretation for three reasons. First, under *Loper Bright*, the Court is not bound to defer to agency interpretations of ambiguous statutes. *See* 603 U.S. at 413 ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."); *see also Barrera*, 2025 WL 2690656, at *5; *Gomes*, 2025 WL 1869299, at *8 n.9. As the Court previously discussed, it finds the statutory text of § 1225 ambiguous, since the text does not clearly address whether Petitioner—who has resided in the United States for more than twelve years and has never sought lawful status—qualifies as an "applicant for admission." *See* § 1225. Second, based upon the statutory context, scheme, and text of § 1225, the Court disagrees with the BIA's conclusion that a noncitizen's mere continued presence in the country alone means that they are "seeking admission" when the noncitizen never attempted to obtain lawful status (as is the case with Petitioner here). *See Barrera*, 2025 WL 2690565, at *5; *Singh*, 2025 WL 2699219, at *3. Especially in light of the Laken Riley Act's modifications to the statutory scheme and the statutory context surrounding Sections 1225 and 1226, the Court is not persuaded by the BIA's statutory interpretation. *See supra*, Section III(B); *Barrera*, 2025 WL 2690565, at *5. Thus, "because it is the 'responsibility of the court to decide whether the law means what the agency says,' the Court disagrees with the holding of *Matter of Yajure* and declines to follow it." *Barrera*, 2025 WL 2690565, at *5. Third and lastly, the Court finds persuasive that "*every court* [that] has examined this novel interpretation of Section 1225 by the United States has rejected their theory and adopted Petitioner's." *Id*. This Court's own review of federal court decisions reveals that numerous federal courts concur with this Court's interpretation of the INA's statutory language, including many within the Sixth Circuit. *See, e.g.,*

*Barrera*, 2025 WL 2690565, at *6 ("Section 1226 applies to [Petitioner's] detention."); *Singh*, 2025 WL 2699219, at *5 ("Based upon the language, text, structure, and recent congressional action, Section 1226 governs [Petitioner's] detention."); *Ballestros*, 2025 WL 2880831, at *4; *Patel*, 2025 WL 2823607, at *3–5; *Pizarro Reyes*, 2025 WL 2609425, at *7; *Lopez-Campos*, 2025 WL 2496379, at *8; *Gomes*, 2025 WL 1869299, at *5–6; *Rodriguez*, 779 F.Supp.3d at 1255–60; *Vasquez Garcia v. Noem*, No. 25-CV-02180, 2025 WL 2549431 (S.D. Cal. Sep. 3, 2025); *Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa et al.*, No. 2:25-CV-02157-DLR, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis et al.*, No. 1:25-CV-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Maldonado v. Olson*, No. 0:25-CV-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero v. Hyde, et al.*, No. 1:25-CV-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Kostak v. Trump et al.*, No. 3:25-CV-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025).

Taken together, the Court concludes that the statutory text, context, and legislative history of Sections 1225 and 1226, considered alongside longstanding federal immigration practice, renders § 1225(b)(2)(A) inapplicable to Petitioner's detention. Instead, § 1226(a) applies.

### C. Due Process

Petitioner presently remains in ICE custody, to the best of this Court's knowledge. Petitioner alleges that, and the Court must determine whether, his continued detention violates his Fifth Amendment right to due process. The Fifth Amendment's Due Process Clause extends to all persons, including non-citizens, regardless of their immigration status. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *see also Trump v. J.G.G. et al.*, 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of

removal proceedings." (citation and quotations omitted)). In determining whether a civil detention violates a detainee's due process rights, the *Mathews v. Eldridge* three-part balancing test applies. 424 U.S. 319 (1976). Under that framework, the Court weighs three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. Respondents argue that because Petitioner has received notice of the charges against him, has access to counsel, attended a hearing with an immigration judge, has requested bond, can submit a response to ICE's appeal regarding the bond decision, and has applied for cancellation of his removal, he has not been denied due process. [R. 13, pp. 17–18]. The Court will consider Respondent's argument in light of the three *Mathews* factors.

### 1. Private Interest

Respondents do not dispute Petitioner's significant private interest in not being detained. "[T]he interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, (2004). In fact, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In assessing the liberty interest at stake, courts can consider the detainee's condition of confinement in order to determine if those conditions are indistinguishable from criminal incarceration. *Martinez v. Noem*, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025).

Here, Petitioner is being held at Oldham County Detention Center, where he is separated from his wife, U.S. citizen child, and four other children for whom he is a paternal figure. [R. 1,

p. 2]. Moreover, the automatic stay invoked by DHS does not have a foreseeable end date, since "[i]f the BIA does not resolve the appeal within the ninety-day period, ICE can seek a discretionary stay for an additional 30 days." *Sampiao v. Hyde*, 2025 WL 2607924, at *10 (citing 8 C.F.R. § 1003.6(c)(5)). Further, if the matter is referred to the Attorney General, she can stay the case indefinitely pending its disposition. 8 C.F.R. § 1003.6(d). Petitioner thus faces months or years under the automatic stay. *See Lopez-Campos*, 2025 WL 2496379, at *5 ("Bond appeals before the BIA, on average, take six months to complete."). The fact that Petitioner has already received the various procedures outlined above, such as a bond hearing, access to counsel, and the ability to respond to ICE's appeal of the IJ's bond determination, does not diminish Petitioner's current interest—being free from allegedly unlawful detention. Therefore, the Court finds that the first *Mathews* factor strongly favors Petitioner. *See Barrera*, 2025 WL 2690565, at *6; *Singh*, 2025 WL 2699219, at *4; *Patel*, 2025 WL 2823607, at *5.

### 2.  Risk of Erroneous Deprivation

The second *Mathews* factor addresses the risk of erroneous deprivation of Petitioner's liberty interest due to the automatic stay procedure. *See* 424 U.S. at 335. The Court here finds that this factor also weighs in Petitioner's favor; the regulation's procedures are especially likely to deprive Petitioner and those like him of their liberty because it is only those noncitizens who have already received a ruling by an IJ ordering their release from detention who are subject to the automatic stay. *See Sampiao*, 2025 WL 2607924, at *10; *Garcia Jimenez v. Kramer*, 2025 WL 2374223, at *3 (D. Neb. Aug. 14, 2025) ("[T]he only individuals subject to the automatic stay are those who, by definition, prevailed at their bond hearing.").

At Petitioner's bond hearing, the IJ heard testimony, reviewed evidence, and made an independent decision that Martinez-Elvir was eligible for release and that bond was appropriate. 8

C.F.R. § 1003.19(a). Despite this, the automatic stay permits the United States to "usurp" the IJ's role and unilaterally decide to nevertheless detain Petitioner, in contrast with the IJ's express ruling. *See Sampiao*, 2025 WL 2607924, at *10; *Ashley v. Ridge*, 288 F. Supp. 2d 662, 668, 671 (D.N.J. 2003) (describing the automatic stay regulation as creating a "patently unfair situation by 'tak[ing] the stay decision out of the hands of the judges altogether and giv[ing] it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified'" and "render[ing] the Immigration Judge's bail determination an empty gesture"). Of note here is that Respondents do not contest the IJ's findings in their appeal—findings that Petitioner was neither a flight risk nor a danger to the community and, therefore, that Petitioner's release on bond was warranted. *See* [R. 13, pp. 13, 15–16]. Instead, DHS appealed solely to argue that Petitioner should be detained under § 1225, not § 1226. *See id.* Taken together, the Court finds that the second *Mathews* factor also favors Petitioner. *See Barrera*, 2025 WL 2690565, at *6; *Singh*, 2025 WL 2699219, at *4; *Patel*, 2025 WL 2823607, at *6.

### 3. United States' Interest

The third and final *Mathews* factor pertains to the United States' interest in the procedure at issue, as well as the financial or administrative burdens associated with alternative procedures. *Mathews*, 424 U.S. at 335. Respondents argue that "Petitioner's due process rights as a noncitizen who has not been admitted to the United States does not overcome the Government's interests in maintaining his detention during the limited automatic stay time period." [R. 13, p. 17]. Respondents offer no explanation, however, as to what the government's interests are in maintaining Petitioner's detention during the stay. *See id.* The single case Respondents cite, *Demore v. Kim*, suggests that preventing "large numbers of deportable criminal aliens [from] skipping their hearings and remaining at large in the United States unlawfully" was Congress's

motivation in enacting 8 U.S.C. § 1226(c). 538 U.S. at 528. The Court has already extensively discussed the differences between § 1226 and § 1225, *see supra* Section III(B), so it is not clear how *Demore* is applicable to the present case, where Respondents assert that Petitioner is detained under § 1225.

Regardless, the Court nevertheless recognizes the United States's strong interest in ensuring that noncitizens—criminal or otherwise—do not harm citizens or the community and that they appear for future immigration proceedings. These interests manifest in the IJ's bond determination where the IJ assesses a noncitizen's danger to the community and flight risk. *See Sampiao*, 2025 WL 2607924, at *12 ("The government does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community."). Accordingly, these precise interests were already addressed by an independent, neutral arbitrator—the IJ in Petitioner's case—where she determined that Petitioner specifically does not pose these risks. *See* [R. 1, p. 3]. Given this determination, the "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025). Therefore, the Court concludes that the third *Mathews* factor also favors Petitioner. *See Barrera*, 2025 WL 2690565, at *7; *Singh*, 2025 WL 2699219, at *5; *Patel*, 2025 WL 2823607, at *6.

As a whole, then, all three *Mathews* factors weigh in favor of Petitioner. The Court agrees with Petitioner that his detention under § 1225's mandatory detention framework violates his due process rights.

## IV.    CONCLUSION

Taken together, the text and context of the INA show that Petitioner's detention is governed by 8 U.S.C. § 1226, not § 1225. The Court further finds that Petitioner's detention pursuant to the

automatic stay codified at 8 C.F.R. § 1003.19(i)(2) violates his Fifth Amendment due process rights under *Mathews*. *See* 424 U.S. at 335. Respondents' violations of the INA and the Fifth Amendment Due Process Clause are sufficient to grant Petitioner's requested relief.

Recently, where individuals have been illegally detained by ICE, courts have ordered their release. *See, e.g., Singh*, 2025 WL 2699219, at *5; *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025). Further, as the Supreme Court has recognized, "[h]abeas has traditionally provided a means to seek *release* from unlawful detention." *Thuraissigiam*, 591 U.S. at 103–04. Because Petitioner is currently subject to bond, Respondents are ordered to release Petitioner immediately upon posting of bond with no other conditions beyond those imposed by the IJ.

For these reasons, the Court will grant Petitioner's petition for writ of habeas corpus and order his release from custody upon his posting of bond. Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Petitioner's Petition for Writ of Habeas Corpus, [**R. 1**], is **GRANTED**.

2. Upon the posting of bond, Respondents are **ORDERED** to release Petitioner from custody and are further **ORDERED** to certify compliance with the Court's order by a filing on the docket no later than October 30, 2025.

This the 27th day of October, 2025.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY